IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OTIS BROWN, JR.,                    :    MISCELLANEOUS ACTION
                                    :    NO. 15-0274
          Petitioner,              :
                                    :
     v.                             :
                                    :
UNITED STATES OF AMERICA,           :
                                    :
          Respondent.               :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              July 13, 2016


          Otis Brown, Jr. ("Brown" or "Petitioner"),[1] who is
currently sixty-six years old and a Pennsylvania resident,
petitions the Court for the expungement of a federal misdemeanor
conviction he received in 1974, when he was twenty-four years
old. Petitioner submits that he is entitled to expungement under
the Federal Youth Corrections Act ("FYCA"), 18 U.S.C. § 5021
(1970), which was repealed in 1984. ECF No. 1. The Government
does not oppose the petition. ECF No. 2.

          Because Petitioner has satisfied the Court that he is
entitled to expungement of his 1974 conviction under the FYCA

---

[1]     Petitioners seeking expungement under the FYCA
sometimes bring their cases as "John Does" to protect anonymity.
See, e.g., Doe v. United States, 980 F.2d 876 (3d Cir. 1992).
Petitioner has not done so here, choosing instead to proceed
under his given name.

and subsequent case law interpreting that statute, the Court will grant the expungement.

## I.   FACTUAL BACKGROUND

In 1974, Petitioner pleaded guilty to stealing less than $250 of Government-owned radios from the United States Army's Tacony Warehouse located in Philadelphia, in violation of 18 U.S.C. § 641. Pet. ¶¶ 1, 2, ECF No. 1; Pet'r's Mem. 1, ECF No. 1-1. He was twenty-four years old at the time of the offense. Pet. ¶ 2.

A magistrate judge in the Eastern District of Pennsylvania sentenced Petitioner under the FYCA[2] to six months' probation, which he completed without incident. Id. at ¶¶ 1, 2; see also Pet'r's Mem. 15 (Federal Bureau of Investigation report indicating that Petitioner "received six months['] probation under Youth Corrections Act").

Where an offender was sentenced under the FYCA and completed his sentence without incident, the Act provided certain procedures by which the offender's conviction could be

---

[2]     Although the FYCA generally applied to offenders age twenty-two or younger, see 18 U.S.C. § 5006(e) (1970) (defining "youth offender") (repealed 1984), courts were permitted to apply the Act to individuals up to age twenty-six after considering "the previous record of the defendant as to delinquency or criminal experience, his social background, capabilities, mental and physical health, and such other factors as may be considered pertinent," id. § 4209 (1970) (repealed 1984).

expunged. 18 U.S.C. § 5021 (1970) (repealed 1984). Petitioner declares that after his arrest, his court-appointed attorney, whose name he cannot recall, advised him that if he pleaded guilty to the offense and "did not get into any trouble" while on probation, his criminal record would be expunged. Brown Decl. ¶¶ 2, 3, ECF No. 7. Petitioner states that he did not receive a certificate or other documentation of expungement after his probation period terminated, and he had no contact with his attorney or any probation officer following his sentencing. Id. at ¶¶ 4, 5.

For many years, Petitioner believed that the record of his 1974 conviction was expunged. Id. ¶ 6. It was not until he underwent a background check while applying for a job in 2005 that he learned that the conviction remained on his record. Id.

In the forty years since Petitioner's federal conviction, he has not been convicted of any other crime, has become a father and grandfather, and has positively contributed to his community. Pet. ¶¶ 4, 5.

## II.  PROCEDURAL HISTORY

Petitioner filed a petition for expungement with this Court on December 23, 2015. ECF No. 1. Shortly thereafter, the Government filed a response, ECF No. 2, and Petitioner filed a reply brief, ECF No. 3. The Court held a telephone conference

3

with the parties on April 5, 2016, during which the Court
questioned the parties as to whether it had jurisdiction to
consider the expungement petition. ECF No. 5.

In preparation for the telephone conference, the
United States Probation Office provided the Court with the sole
record it possessed concerning Petitioner--an index card
indicating that Petitioner was removed from probation on
September 19, 1974, and therefore served the full term of his
six-month probationary sentence. See Ex. 1.

Thereafter, the Court issued an order requiring
Petitioner to submit an affidavit setting forth the
circumstances of the termination of his probation. ECF No. 6. In
addition, the Court ordered the Clerk of Court for the Eastern
District of Pennsylvania to undertake a search for any records
in its possession in connection with Petitioner's criminal case.
Id.

On May 4, 2016, Petitioner submitted a declaration,
averring, among other things, that he completed his six-month
probation period without "get[ting] into any trouble" or
"check[ing] in with anyone" but "did not receive a certificate
of completion" or "hear from [his] court appointed attorney
after [his sentencing] date." Brown Decl. ¶¶ 4, 5. His
recollection of the relevant events was otherwise limited. See
generally id.

4

Around the same time, a supervisor in this District's records department sent a memorandum to the undersigned, stating that all records in connection with Petitioner's 1974 criminal proceedings had been destroyed in 1990 pursuant to the Federal Judiciary's document retention policy, which states that records of misdemeanor and petty offense proceedings conducted by United States magistrate judges may be destroyed five years after the close of the case. Memorandum from Carlos M. Cardona to the Hon. Eduardo C. Robreno 1, 4 (Apr. 29, 2016), ECF No. 10.

In light of these circumstances, Petitioner requested leave to file "a brief in support of an ineffective assistance of counsel claim" concerning counsel in his criminal case. ECF No. 8. The Court denied this request, explaining that a claim of ineffective assistance of counsel may be considered only in the context of a collateral attack on an underlying criminal judgment raised in a petition under 18 U.S.C. § 2255. ECF No. 11 at 1 n.1. However, the Court permitted Petitioner to submit a supplemental brief explaining why he is entitled to expungement where the Clerk's Office has destroyed the records in connection with the underlying criminal proceedings and Petitioner had no recollection of the circumstances surrounding the termination of his probation. Id. at 1.

Thereafter, Petition filed a motion for a nunc pro tunc order issuing a certificate of completion under the FYCA,

5

which would thereby render him eligible for expungement. ECF No. 12. The Government responded that it did not oppose the motion. ECF No. 15. Accordingly, Petition's motion for a nunc pro tunc order and petition for expungement of his criminal conviction are ripe for disposition.

## III. DISCUSSION

Petitioner seeks a nunc pro tunc order issuing a certificate of completion under the FYCA, which would thereby render his 1974 criminal conviction eligible for expungement. Pet.'s Mot. Nunc Pro Tunc Order at 1, ECF No. 12.

An individual who moves to expunge his criminal conviction does not seek to vacate or set aside the conviction; rather, he seeks "[t]he judicial editing of history." United States v. Rowlands, 451 F.3d 173, 176 (3d Cir. 2006) (quoting Rogers v. Slaughter, 469 F.2d 1084, 1085 (5th Cir. 1972) (per curiam)). Generally, "when a defendant moves to expunge records, she asks that the court destroy or seal the records of the fact of the defendant's conviction and not the conviction itself." Id. (quoting United States v. Crowell, 374 F.3d 790, 792 (9th Cir. 2004)).

The issues presented by the instant petition are two-fold: first, whether this Court has jurisdiction to expunge Petitioner's conviction, and second, if this Court does have

jurisdiction, whether Petitioner qualifies for expungement under the facts of this case. The Court will take up the issue of jurisdiction first.

A.    <u>Jurisdiction to Expunge Criminal Records</u>

There is no general federal statute that authorizes district courts to grant expungement petitions. Nor can district courts invoke their inherent powers or ancillary jurisdiction to grant such petitions, at least in the Third Circuit.[3] <u>United States v. Dunegan</u>, 251 F.3d 477, 480 (3d Cir. 2001). Instead, "in the absence of any applicable statue enacted by Congress, or an allegation that the criminal proceedings were invalid or illegal, a District Court does not have the jurisdiction to expunge a criminal record." <u>Id.</u>; <u>see also United States v. Rowlands</u>, 451 F.3d at 178 (rejecting contention that federal courts have "inherent jurisdiction" over a petition for expungement).

---

[3]     Other circuits have permitted the use of inherent power to expunge criminal convictions under narrow circumstances. <u>See, e.g.</u>, <u>United States v. Smith</u>, 940 F.2d 395, 396 (9th Cir. 1991) (assuming that federal courts have inherent power to expunge criminal records, but noting that "it is a narrow power, appropriately used only in extreme circumstances"); <u>United States v. Schnitzer</u>, 567 F.2d 536, 539 (2nd Cir. 1977) ("[E]xpungement lies within the equitable discretion of the court, and relief usually is granted only in extreme circumstances," where "court have considered the delicate balancing of the equities between the right of privacy of the individual and the right of law enforcement to perform their necessary duties.").

In this case, Petitioner predicates his expungement request on a federal statute, the FYCA, under which he was sentenced in 1974 and which has since been repealed. The Court therefore turns to the language of the FYCA and case law interpreting pertinent provisions of that Act to ascertain whether it confers this Court with jurisdiction to consider the instant expungement petition.

Section 5021 of the FYCA provides as follows:

(a) Upon the unconditional discharge by the division of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the [Youth Correction Division of the Board of Parole] shall issue to the youth offender a certificate to that effect.

(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.

18 U.S.C. § 5021 (1970) (repealed 1984).

In support of his argument that the FYCA provides for expungement of his conviction, Petitioner relies primarily on United States v. Doe, 980 F.2d 876 (3d Cir. 1992). Doe involved a college student who pleaded guilty to conspiracy to defraud the United States of approximately $9,000 in student loan proceeds after he accessed his university's computer system,

enrolled in classes, and awarded himself grades and credit for classes he never attended while receiving federal financial aid. Id. at 876-77. The petitioner was sentenced to five years' probation, conditioned on completing restitution payments within three years. Id. at 877. The petitioner made the full restitution within the three-year period, and the court ordered that he be "unconditionally discharged from probation" and his conviction "set aside." Id. Several years later, the petitioner filed a motion for expungement. Id. The district court denied the motion, finding that no express language in the FYCA authorized an expungement. Id. The Third Circuit reversed.

The Third Circuit found that the term "set aside" used in the FYCA is ambiguous. Id. at 878. It therefore conducted an extensive inquiry into the FYCA's legislative history and concluded that "[t]he testimony of the FYCA's drafters evidences their concern that a youth, sentenced under the FYCA, receive a new start and that the criminal record not impede his or her development as a productive member of society." Id. at 881. The court therefore found that the "rehabilitative purposes of this statute are best served by an expungement of a qualified youth's criminal record," and that "this is what Congress meant" by the term "set aside" as used in the Act. Id.

In Doe, the petitioner made "full restitution" and was released from his term of probation early. At that time, the

9

district court ordered that he be "unconditionally discharged from probation" and that his conviction be "set aside." Id. at 876-77. Here, conversely, the record before the Court contains no indication that Petitioner was discharged from his six-month term of probation early or that the sentencing court ordered that his conviction be "set aside." Thus, while Doe instructs that the FYCA affords district courts jurisdiction to expunge the convictions of certain offenders who were sentenced under that Act, it is unclear from the record whether Petitioner is one of those offenders.

        B.    Requirements for Expungement Under the FYCA

        Having determined that the Court has jurisdiction to consider the instant petition, the Court turns to the issue of whether the facts of this case render Petitioner eligible for expungement.

        A case from the Supreme Court, Tuten v. United States, 460 U.S. 660 (1983), is instructive as to when an offender sentenced under the FYCA qualifies for expungement. The question before the Tuten Court was "whether a conviction upon which a youth offender was sentenced to probation under the [FYCA] was automatically set aside after he served his full term of probation." Id. at 661. The case involved a petitioner who pleaded guilty at age nineteen to carrying a pistol without a

license, in violation of the District of Columbia Code. Id. The petitioner was sentenced under the FYCA to two years' probation and was unconditionally discharged from the FYCA program at the end of the two-year probationary period. Id. Nearly a decade later, the petitioner was again convicted of carrying a pistol without a license under the same District of Columbia provision, and the sentencing court applied an enhanced penalty, over the petitioner's objection, based on the petitioner's earlier conviction for the same offense. Id. at 661-62. On appeal, the petitioner argued that the earlier conviction had been expunged under the FYCA following his successful completion of the probationary term and that the earlier conviction therefore could not provide a basis for sentencing him as a recidivist. Id. at 662.

The Supreme Court affirmed the application of the recidivist enhancement. Id. at 663. Relying primarily on the "ordinary meaning" of the language of § 5021, it concluded that the petitioner's FYCA conviction had not been "set aside." Id. at 667. The Court explained that under § 5021's plain language, "discharge shall automatically set aside the conviction" only if the court "unconditionally discharge[s] [the] youth offender from probation prior to the maximum period of probation theretofore fixed by the court." Id. at 666 (alteration in original) (emphasis in original) (quoting 18 U.S.C. § 5021(b)).

11

Thus, "[u]nder the interpretation of § 5021(b) plainly suggested by the language of the statute, the conviction of a youth offender who has been placed on probation under § 5010(a) is not set aside, where, as here, the court has <u>not</u> exercised its discretion to discharge him unconditionally 'prior to the expiration of the maximum period of probation theretofore fixed by the court.'" <u>Id.</u> at 667 (emphasis in original). The Court found that this interpretation was also supported by the policy behind the FYCA:

> This limitation is fully consistent with the rehabilitative purposes of the [F]YCA as well as with Congress' intent to employ the set-aside as an incentive for positive behavior by youths sentenced under the Act. The incentive might be significantly weaker if convictions were set aside regardless of whether the youth offender, by his conduct during the probationary period, had convinced the sentencing court to discharge him before the expiration of his probationary term. Although it would also have been reasonable for Congress to make the set-aside available to any youth offender who completes probation without incident, this result is certainly not compelled by the purposes of the Act.

<u>Id.</u> at 667.

Because <u>Tuten</u> makes clear that unconditional discharge from a term of probation is not sufficient under the FYCA to "automatically set aside," i.e., expunge, the conviction, this Court would ordinarily need further information about Petitioner's criminal case before it could expunge his

12

conviction. However, because of the passage of time and the Federal Judiciary's document retention policies, no records are currently available in this Court in connection with Petitioner's criminal case. Likewise, the Government represents that the United States Attorney's Office for the Eastern District of Pennsylvania and the Federal Bureau of Investigation ("FBI") no longer have records related to Petitioner's criminal case. And Petitioner does not have copies of any records in connection with his case, outside of the FBI report that he included with his Petition, and could not recall whether he had ever received a certificate of completion. See generally Brown Decl.

The Probation Office has provided the sole document in its possession in connection with Petitioner's criminal case: an index card, which provides minimal statistical information about Petitioner. Ex. 1. It states that Judge Leomporra, a former magistrate judge in the Eastern District of Pennsylvania, was the sentencing judge. Id. It also shows that Petitioner's sentencing date was March 20, 1974, and that Petitioner was "removed" from probation on September 19, 1974. Id. Petitioner was therefore discharged from probation one day short of six months. A "remarks" section of the index card states only "9-19-74: CLOSED," id., and therefore it does not suggest anything

about the conviction being "set aside" or that Petitioner was enrolled in a program under FYCA.[4]

Tuten makes clear that it was the responsibility of the probation officer to alert the Court about the possibility of an early release for an offender sentenced under the FYCA: "Prior to the expiration of a youth offender's term of probation, a probation officer [wa]s required by the Parole Commission to file a report evaluating the probationer's conduct and progress and reminding the court that an early unconditional discharge will automatically set aside the conviction." Tuten, 460 U.S. at 668 n.12 (citing Admin. Office of the U.S. Courts, Guide to Judiciary Policies and Procedures: Probation Manual § 5011 (1978)). This requirement was designed to "ensure that the court [wa]s made aware of its duty to decide whether granting an early unconditional discharge [wa]s warranted in light of the remedial ends of the [F]YCA." Id. Therefore, if Petitioner was not issued early release from probation and a certificate of completion, it was not due to his own lack of diligence, because the probation officer was required to make a report to the sentencing court, and the court had a duty to decide whether early release was warranted.

---

[4]     Note, however, that the Probation Office's index card contains at least two typographical errors. It states Petitioner's age as 59 and his birthdate as 2-23-15. Id.

14

Due to the lack of records, the Court cannot ascertain whether (1) the probation officer issued a report to the sentencing court, (2) the sentencing court received the probation officer's report and considered early release, or (3) Petitioner was issued a certificate setting aside his conviction. These circumstances, however, do not automatically eliminate the possibility of expungement in this case.

In Tuten, the Supreme Court contemplated a remedy available to those similarly situated to Petitioner:

> [T]he remedial purposes of the [FYCA] are not frustrated by the possibility that a court may inadvertently fail to grant an early unconditional discharge. A youth offender who believes that the sentencing court's failure to grant an early unconditional discharge from probation was an oversight may, following the completion of his probationary period, move that court to exercise its discretion to grant him an early unconditional discharge nunc pro tunc and to set aside his conviction.

Id. at 667-68 (footnote omitted). Accordingly, the FYCA gives district courts discretion to retroactively grant an early unconditional discharge and to set aside a conviction after the completion of the probationary period.

Here, Petitioner alleges that if he was not released early from his probationary term and granted a certificate, these failures were likely due to an oversight by the probation office, the court, or both. Pet'r's Mot. Nunc Pro Tunc Order 4,

15

ECF No. 12. From the sole record available, the Probation
Office's index card, there is no indication that Petitioner
violated any of the terms of probation. Petitioner was released
from probation as scheduled, and he reports that he "was not
required to check in with anyone" during his probationary term.
Brown Decl. ¶ 4. And the destruction of all records associated
with Petitioner's criminal case was carried out pursuant to
Federal Judiciary policy and therefore was not due to any action
or inaction by the Petitioner. See generally Memorandum from
Carlos M. Cardona to the Hon. Eduardo C. Robreno (Apr. 29, 2016)
(explaining that records associated with Petitioner's criminal
case were destroyed in June 1990 pursuant to judiciary policy).

        Petitioner's delay in bringing an action for
expungement of his record also should not serve as a strike
against him. Although Petitioner waited over forty years to seek
expungement, Petitioner, like other defendants sentenced under
the FYCA in this Circuit and elsewhere, was apparently led to
believe that his record would be expunged automatically if he
pleaded guilty to the underlying offense and completed the terms
of his probation without incident. Brown Decl. ¶ 2; see also
United States v. Woolsey, 535 F.3d 540, 545 (7th Cir. 2008)
(stating that the defendant had "recounted that his probation
officer [at the time of his FYCA offense] had informed him that
th[e] conviction would be set aside automatically upon

16

successful completion of his probation," but that "this
information was not accurate," because "only an <u>early</u> discharge
of probation had the effect of setting aside a conviction under
the Act" (emphasis in original)); <u>Doe</u>, 980 F.2d at 877 (noting
that the petitioner in that case "indicated that he pleaded
guilty believing that his record would be expunged once he
completed his probationary period"). Finally, the record shows
that Petitioner has had no further criminal incidents over the
past four decades and has made positive contributions to his
family and community.

       For these reasons, the Court will grant Petitioner's
motion, pursuant to 18 U.S.C. § 5021(b) and the procedure
outlined in <u>Tuten</u>, 460 U.S. at 668, for early unconditional
discharge from his probationary term nunc pro tunc and will
issue a "certificate" indicating that his 1974 conviction should
be "set aside."

       C.    <u>Scope of the Expungement Order</u>

       Having issued Petitioner a certificate setting aside
his conviction pursuant to 18 U.S.C. § 5021(b), the Court will
next consider the scope of the expungement order.

       The Third Circuit in <u>Doe</u> addressed the scope of
expungement provided by the FYCA. It explained that

       Once a district court issues its order setting aside a
       conviction under section 5021 and transmits the order
       [to the appropriate record keepers] it will not be

17

sufficient . . . merely to enter the words "set aside" on [the] records.

980 F.2d at 882 (citing <u>Doe v. Webster</u>, 606 F.2d 1226, 1244 (D.C. Cir. 1979)). Instead, the expungement must be "complete," and

[t]he set aside must be actual; the conviction records must be physically removed from the . . . criminal files and placed in a separate storage facility not to be opened other than in the course of a bona fide criminal investigation by law enforcement authorities and where necessary for such an investigation. These records may not be used . . . for any other purpose, nor may they be disseminated to anyone, public or private, for any other purpose.

<u>Id.</u> at 882-83 (citing <u>Webster</u>, 606 F.2d at 1244). Finally, record keepers "shall respond in the negative to any and all inquiries into the expunged conviction," and the "youthful offender whose conviction has been thus expunged under section 5021 may legally answer in the negative to any inquiry about the expunged conviction." <u>Id.</u> at 883 (citing <u>Webster</u>, 606 F.2d at 1244-45).

Petitioner has submitted a proposed expungement order. <u>See</u> ECF No. 3-1. Although the Government does not oppose expungement, it takes issue with two provisions of Petitioner's proposed order. First, the Government suggests that Petitioner's proposed order is overly broad and that the order need only direct that the record be expunged. ECF No. 2 at ¶ 4(a). Second, the Government represents that given the age of this case, the

18

district court and the U.S. Attorney's Office have already destroyed the records (suggesting that the order need not contain language directed at these entities). Id. at ¶ 4(b). Because Doe provides explicit directives as to the contents of the expungement order, the Court will decline to enter Petitioner's proposed order and instead enter an order consistent with the language used in Doe.

**IV.   CONCLUSION**

For the reasons stated above, the Court will first grant Petitioner's motion for early unconditional discharge from his probationary term nunc pro tunc and for a certificate setting aside his 1974 misdemeanor criminal conviction. Second, because that certificate renders Petitioner eligible for expungement of his record under Doe, 980 F.3d 876, the Court will grant his petition for expungement.

An appropriate order follows.